JUDGE GARDEPHE

# 18 CV 7380

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEARSON EDUCATION, INC.; CENGAGE LEARNING, INC.; ELSEVIER INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; and BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DOE 1 D/B/A ANYTHING YOU CAN IMAGINE; DOE 2 D/B/A BOOKSABILLIONS and MOMMA'S MEDIA 'N MORE; DOE 3 D/B/A BOOKS WORM; INC. and SHELF BOOK; DOE 4 D/B/A CLINGONBLING, GIFT_FAIR, and ONLINE MYSOLUTIONS; DOE 5 D/B/A CPMOM; DOE 6 D/B/A ERA-BOOKSTORE; DOE 7 D/B/A HIDDEN LAKE TREASURE and PUBLIX BOOKS LLC; DOE 8 D/B/A MURRAY MEDIA; DOE 9 D/B/A PRIME BOX UP; DOE 10 D/B/A INFO AVENUE; DOE 11 D/B/A ZAGGIE; BORGASORUS BOOKS, INC.; FLIPPING PAGES INC.; BENJAMIN BARRETT ROBERTS; CAMERON WESLEY ROBERTS; SPENCER J. ROWLES; CARLA M. ROWLES; TIERNEY M. ROWLES; WESLEY ROWLES; CARLOS A. CORRASCO; ROBERT D. MEADOWS; and UNITYSTORE INC., <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR:** <br><br> 1. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*); and** <br> 2. **TRADEMARK COUNTERFEITING (15 U.S.C. § 1114).** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Pearson Education, Inc., Cengage Learning, Inc., Elsevier Inc., McGraw-Hill Global Education Holdings, LLC, and Bedford, Freeman & Worth Publishing Group, LLC (hereinafter, collectively "Plaintiffs," and each a "Plaintiff"), by and through their undersigned counsel, hereby allege as follows for their Complaint against Defendants Doe 1 doing business as Anything You Can Imagine; Doe 2 doing business as Booksabillions and Momma's Media 'N More; Doe 3 doing business as Books Worm, Inc. and Shelf Book; Doe 4 doing business as Clingonbling, Gift_Fair, and Online mySolutions; Doe 5 doing business as Cpmom; Doe 6 doing

business as ERA-Bookstore; Doe 7 doing business as Hidden Lake Treasure and Publix BOOKS LLC; Doe 8 doing business as Murray Media; Doe 9 doing business as Prime Box up; Doe 10 doing business as Info Avenue; Doe 11 doing business as ZAGGIE; Borgasorus Books, Inc.; Flipping Pages Inc.; Benjamin Barrett Roberts; Cameron Wesley Roberts; Spencer J. Rowles; Carla M. Rowles; Tierney M. Rowles; Wesley Rowles; Carlos A. Corrasco; Robert D. Meadows; and UnityStore Inc. (hereinafter, collectively "Defendants," and each a "Defendant"):

## NATURE OF THE CASE

1.     This case arises out of extensive violations of the federal laws copyright and trademark laws.  Defendants are intentionally advertising, selling, and distributing counterfeit textbooks at the expense of authors, students, publishers and others.

2.     Plaintiffs are five of the leading educational publishers in the United States.  They provide a comprehensive range of traditional physical and digital educational content to teachers, professionals, and secondary, post-secondary, and graduate-level students.

3.     Defendants are merchants who conduct business in the United States by means of at least 28 online storefronts (the "Online Storefronts" or "Storefront") primarily on Amazon.com, as well as on Abebooks.com, Alibris.com, and Valore.com (collectively, the "Online Marketplaces").  All Defendants sell and distribute counterfeit textbooks on Amazon or Abebooks, and some also sell and distribute counterfeit textbooks on other Online Marketplaces.  Through their Online Storefronts, and hiding behind the anonymity of the internet, Defendants sell counterfeit textbooks that infringe Plaintiffs' copyrights and bear unauthorized reproductions of Plaintiffs' federally registered trademarks.  Defendants sell the infringing textbooks to individual consumers, wholesale distributors, and other re-sellers.

4.     Plaintiffs sell their textbooks through various wholesale and retail channels.  Sales

of Plaintiffs' textbooks on the Online Marketplaces—whether by wholesalers or individual resellers—represent an important sales channel for students looking to purchase Plaintiffs' textbooks.  Defendants advertise, offer, and sell their counterfeit textbooks on the Online Marketplaces to the same students and other consumers seeking out legitimate copies of Plaintiffs' textbooks on the Online Marketplaces.  Defendants identify the textbooks using the legitimate textbooks' respective titles, editions, authors, ISBN (the International Standard Book Number), and cover images bearing Plaintiffs' trademarks.  Defendants often sell their counterfeit copies well below market prices for the authentic books.  In so doing, Defendants undercut sales and the perceived value of authorized and legitimate copies of Plaintiffs' textbooks.

5.     Plaintiffs bring this Complaint for damages and injunctive relief to stop and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

## PARTIES

6.     Plaintiff Bedford, Freeman & Worth Publishing Group, LLC ("Macmillan Learning") is a New York limited liability company with a principal place of business at One New York Plaza, New York, New York 10004, and is wholly owned by Macmillan Holdings, LLC, also a New York limited liability company.

7.     Plaintiff Cengage Learning, Inc., formerly Thomson Learning Inc. ("Cengage"), is a Delaware corporation with offices located in New York.

8.     Plaintiff Elsevier Inc. ("Elsevier"), is a Delaware corporation with a principal place of business at 230 Park Avenue, New York, New York 10169.

9.     Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company with a principal place of business at 2 Penn Plaza, New York, New York 10020.

10.     Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with a principal place of business at 330 Hudson Street, New York, New York 10013.

11.     Defendant Doe 1 operates the Anything You Can Imagine Online Storefront on Amazon.com.  Doe 1's true identity and location are unknown to Plaintiffs.

12.     Defendant Doe 2 operates the Booksabillions and Momma's Media 'N More Online Storefronts on Amazon.com.  Doe 2's true identity and location are unknown to Plaintiffs.

13.     Defendant Doe 3 operates the Books Worm, Inc. and Shelf Book Online Storefronts on Amazon.com.  Plaintiffs could not locate any Doe 3's true identity and location are unknown to Plaintiffs.

14.     Defendant Doe 4 operates the Clingonbling, Gift_Fair, and Online mySolutions Online Storefronts on Amazon.com.  Doe 4's true identity and location are unknown to Plaintiffs.

15.     Defendant Doe 5 operates the Cpmom Online Storefront on Amazon.com.  Doe 5's true identity and location are unknown to Plaintiffs.

16.     Defendant Doe 6 operates the ERA-Bookstore Online Storefront on Amazon.com.  Doe 6's true identity and location are unknown to Plaintiffs.

17.     Defendant Doe 7 operates the Hidden Lake Treasure and Publix BOOKS LLC storefronts on Amazon.com.  Doe 7's true identity and location are unknown to Plaintiffs.

18.     Defendant Doe 8 operates the Murray Media Online Storefront on Abebooks.com.  Doe 8's true identity and location are unknown to Plaintiffs.

19.     Defendant Doe 9 operates the Prime Box up store Online Storefront front on Amazon.com.  Doe 9's true identity and location are unknown to Plaintiffs.

20.     Defendant Doe 10 operates the Info Avenue Online Storefront on Amazon.com.  Upon information and belief, Doe 10 also does business as Springs Logistics.  Doe 10's true

identity and location are unknown to Plaintiffs.

21.     Defendant Doe 11 operates the ZAGGIE Online Storefront on Amazon.com.  Doe 12's true identity and location are unknown to Plaintiffs.

22.     Defendant Borgasorus Books, Inc. ("Borgasorus") is a Missouri corporation with its principal place of business located at 302A East 1st Street South, Wright City, Missouri, 63390. Upon information and belief, Borgasorus operates the Borgasorus Books, Inc. Online Storefronts on Abebooks.com and Alibris.com and the borgasorus Online Storefront on Valore.com.

23.     Defendant Flipping Pages Inc. is a Virginia corporation with its principal place of business located at 5461 Brickshire Drive, Providence Forge, Virginia 23140.  Upon information and belief, Flipping Pages Inc. operates the FlippingPages, LAM's Treasure Chest, and SAEEDHAM4352 Online Storefronts on Amazon.com.

24.     Upon information and belief, Defendant Benjamin Barrett Roberts is an individual who resides in Providence Forge, Virginia and operates the FlippingPages, Shared Knowledge Literacy Foundation, LAM's Treasure Chest, and SAEEDHAM4352 Online Storefronts on Amazon.com.  Upon information and belief, Benjamin Roberts is a Director and principal of Defendant Flipping Pages Inc.

25.     Upon information and belief, Defendant Cameron Wesley Roberts is an individual who resides in Providence Forge, Virginia and operates the FlippingPages, LAM's Treasure Chest, and SAEEDHAM4352 Online Storefronts on Amazon.com.  Upon information and belief, Cameron Roberts is a Director and principal of Defendant Flipping Pages Inc.

26.     Upon information and belief, Defendant Spencer J. Rowles is an individual who resides in Carlsbad, California and operates the Rowlix Online Storefront on Amazon.com.

27.     Upon information and belief, Defendant Carla M. Rowles is an individual who

resides in Vista, California and operates the Rowlix Online Storefront on Amazon.com.

28.     Upon information and belief, Defendant Tierney M. Rowles is an individual who resides in Vista, California and operates the Rowlix Online Storefront on Amazon.com.

29.     Upon information and belief, Defendant Wesley Rowles is an individual who resides in Vista, California and operates The College Book Center Online Storefront on Amazon.com.

30.     Upon information and belief, Defendant Carlos A. Corrasco is an individual who resides in Carlsbad, California and operates the Kapital Enterprise Online Storefront on Amazon.com.

31.     Upon information and belief, Defendant Robert D. Meadows is an individual who resides in Fort Myers, Florida and operates the SwodieBooks Online Storefront on Amazon.com.

32.     Defendant UnityStore Inc. is a New York corporation with its principal place of business located at 10211 Larue Avenue, No. 2F, Corona, NY 11368.  Upon information and belief, UnityStore Inc. operates the UnityStore Online Storefront on Amazon.com.

## JURISDICTION AND VENUE

33.     This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

34.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302, or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants transact business in New York, and committed tortious acts within and/or causing injury to Plaintiffs in New York, and Plaintiffs' claims arise from those activities.  In particular, upon information and belief, Defendants (a) transact business in New York by selling

and shipping textbooks to customers in New York, (b) have committed acts of copyright and trademark infringement and counterfeiting in New York and in this District, and/or (c) have committed acts of copyright and trademark infringement and counterfeiting outside New York causing injury to Plaintiffs in New York, and Defendants expected or should reasonably have expected such acts to have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.  In addition, Defendants sell textbooks, including counterfeit copies of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through online storefronts on highly interactive websites, such as Amazon.com, which are continuously accessible to, target, sell, and ship goods to consumers in New York.

35.     The Court also has general personal jurisdiction over Defendant UnityStore Inc. under N.Y. C.P.L.R. § 301 because it is a New York corporation.

36.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) because, upon information and belief, Defendants conduct, transact, and/or solicit business in this District.

## FACTUAL ALLEGATIONS

### A.     Plaintiffs' Businesses

37.     Plaintiffs are among the largest providers of textbooks and tailored learning solutions in the United States.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content and assessment material in physical, digital, and multi-media formats.  Plaintiffs' publications include physical textbooks.  These textbooks are widely available in the marketplace for sale or rental, including from physical and online bookstores.  Plaintiffs' products are sold throughout the United States and in many other countries, through direct sales channels and via a network of distributors.

38.     Plaintiffs publish their works under many imprints, or brands, that are well known and highly respected.  For example, Cengage's imprints include Brooks/Cole, Delmar, Heinle, and South-Western Educational Publishing; Elsevier's imprints include Academic Press, Butterworth Heinemann, Mosby, and Saunders; MHE's imprints include Irwin, Lange, and McGraw-Hill Higher Education;  Pearson's imprints include Addison Wesley, Allyn & Bacon, Benjamin Cummings, and Prentice Hall; Macmillan Learnings' imprints include Bedford/St. Martin's, W.H. Freeman & Company, and Worth Publishers.  These are just some of Plaintiffs' many valuable and recognizable imprints.  Exhibit A includes a complete list of Plaintiffs' imprints for purposes of their claims against Defendants (the "Imprints").

39.     Plaintiffs invest significant time and money into publishing their textbooks. Plaintiffs (and/or their predecessors) have also invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks.  Plaintiffs spend significant resources annually in the advertisement and promotion of their goods in the United States under their respective marks.  Plaintiffs' Marks and the goodwill of the business associated with them in the United States are of tremendous value and have become associated in the public mind with each Plaintiff's reputation for publishing textbooks of the very highest quality.

40.     Plaintiffs suffer serious financial and reputational injury when their copyrights and trademarks are infringed.  Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.  A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publication of one or more deserving textbooks.  This would have an adverse impact on the

creation of new textbooks, on scholarly endeavor, as well as on the availability and quality of educational content in the humanities, sciences, and social sciences.

### B. Plaintiffs' Respective Copyright Registrations

41.     Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, the works, or derivative works, described on Exhibit B (the "Authentic Works").  Plaintiffs or their affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works.

### C. Plaintiffs' Respective Trademark Registrations

42.     Plaintiffs' Authentic Works bear trademarks as set forth on Exhibit C (hereinafter, the "Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office.  Plaintiffs own or are the exclusive licensee of their respective Marks.   Plaintiffs' Marks are distinctive and arbitrary and many are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

### D. The Online Marketplaces

43.     Amazon.com, Inc. is a global e-commerce company and is the world's largest e-commerce retailer.  In addition to providing a platform for Amazon's own sales, Amazon is a marketplace for third-party sellers to advertise, offer for sale, and sell their products or goods directly to consumers.  Each day, millions of consumers use Amazon's marketplace to purchase a wide range of products, including textbooks, from Amazon and third-party sellers.

44.     Amazon provides third-party sellers on its platform the option of using its Fulfillment by Amazon ("FBA") service, which allows sellers to outsource warehouse, shipping, and customer service operations to Amazon in exchange for additional fees.  FBA sellers ship their

products to one of Amazon's fulfillment centers across the country and Amazon stores, packs, ships, and handles customer service and returns for the FBA seller's goods.  A buyer never interacts with an FBA seller directly unless they have an inquiry and choose to communicate with the seller, which is done anonymously through Amazon's platform.

45.     A key feature of the Amazon marketplace is that multiple sellers can offer the same product.  Each product sold on Amazon is listed on or in connection with a product detail page, which includes a product image, prices, description, customer reviews, ordering options, and links to view offers from all marketplace sellers of the product.

46.     Product detail pages for textbooks on Amazon are tied to the respective textbook's ISBN.  Accordingly, on Amazon there is a single product page[1] for each of Plaintiffs' textbooks that lists multiple sellers, including those who may be selling counterfeits.  To unsuspecting individual consumers, the offers all appear to be for legitimate copies of textbooks because they are listed under the same product page as the authentic version.  The consumer is left to choose which price they want to pay and from which seller.

47.     Customers may leave a substantive review about a product on the product detail page.  Customers may also leave a review about the buying or shipping experience or the quality of the particular product they received.  On the product page, therefore, there often are substantive reviews as well as reviews that comment on the buyer's experience with the particular seller that sold the product.  As such, someone who purchases a textbook on Amazon.com may leave a review complaining about the book's inferior quality, as is often the case with counterfeits, on the

---

[1] While Amazon instructs its sellers to list textbooks under the existing product page identified by the textbook's unique ISBN, some sellers violate that policy by creating a different product page for a particular textbook linked to a unique ASIN (Amazon Standard Identification Number)—the number Amazon uses to identify each unique, non-book product sold on the marketplace—instead of the ISBN.

textbook's product page.  The name of the seller that supplied the counterfeit, or otherwise provided the consumer with an unsatisfactory experience, is not associated with the textbook's product page.  As a result, the overall review—and perceived value—of the author's and publisher's work deteriorates.

48.     Like Amazon, Abebooks.com is a global e-commerce platform, but it specializes in the sale of books and textbooks.  Abebooks is a wholly owned subsidiary of Amazon.  The Abebooks online marketplace allows third-party sellers worldwide to advertise, offer for sale, and sell books, both new and used, directly to consumers.

49.     The Abebooks site provides consumers the ability to search for books by ISBN or title and author.  Thus, with just a few keystrokes, consumers can see a list of third-party sellers offering a title, ranked (by default) from lowest to highest price.  Each listing for the title displays a stock image of the cover of the book and describes whether the book offered for sale is new or used and, if used, the condition of the book.  To unsuspecting individual consumers, the listings all appear to be for legitimate copies of textbooks because they are listed with the same cover image, ISBN, edition, author, and publisher.  The consumer is left to select the book they want to purchase, which all too often is based solely or largely on the price offered.

50.     When a seller receives an order through their online storefront on Abebooks, the seller ships the book(s) directly to the customer.  Abebooks processes the ensuing payments, and then distributes the sales proceeds to sellers on a regular, automated schedule to the financial institution accounts registered to the respective Abebooks seller account.

51.     The Alibris.com and Valore.com online marketplaces platforms operate similarly to Abebooks.com.  Unlike Valore and Abebooks, merchants on Alibris can sell music, film, and TV programs in addition to books.  All three marketplaces have separate pages dedicated to

textbooks.

### E.    The Pernicious Counterfeiting Problem

52.    Textbook counterfeiting is rampant, particularly as a result of the ease by which counterfeiters across the world can sell counterfeit textbooks to U.S. consumers via the many well-known online marketplace platforms.

53.    Counterfeit textbooks are often printed overseas and imported into the lucrative U.S. market.  The counterfeit books are of varying levels of quality; while some appear to be high quality, many others are not, with inferior bindings, printing, or other problems.

54.    While some consumers never know they have purchased a counterfeit textbook, others learn the book is counterfeit after the book's binding starts falling apart, or pages begin falling out.  Many other consumers do not realize that the poor-quality book they received is the work of counterfeiters, and instead think the publishers' textbooks are low quality.

55.    Counterfeiters often expend significant effort to conceal their identities and often use multiple or fictitious names and addresses to register and operate what has become a massive network of online storefronts.  Nonetheless, there are often similarities among the storefronts.  The counterfeit books may also share similar indicia of being counterfeit, which suggests that the counterfeit books were printed by and come from a common source.

56.    In addition to operating under multiple fictitious names, counterfeiters use a variety of other tactics to evade discovery and continue their lucrative, illicit business.  For example, once a counterfeiter receives notice of a lawsuit, he or she will often create new online marketplace accounts on Amazon or other sites using new aliases and/or email addresses.  Further, counterfeiters often use multiple credit card merchant accounts or other payment processing accounts (such as with PayPal or Payoneer) so that they can nimbly switch between accounts to evade detection and secure their illicit proceeds.  It is common for counterfeit sellers to maintain

off-shore bank accounts outside the jurisdiction of the Court, into which they often move the proceeds of their illegal sales.

57.    Another way for counterfeiters to operate under the radar is to sell counterfeit textbooks as used—often described as in "very good" or "like new" condition—despite the books being brand new, albeit unauthorized, copies.   Listing new counterfeit textbooks in "used" condition ostensibly justifies the offer of a new current-edition textbook at a significant savings. The purportedly "used" condition also can explain why a counterfeit does not include a digital access card, which publishers often include with and as a supplement to legitimate copies of their textbooks.

58.    Plaintiffs actively enforce their copyrights and trademarks.  They have and continue to expend great effort combatting textbook counterfeiting worldwide.  Plaintiffs also go to great lengths to educate distributors about the counterfeiting problem in the textbook industry.   In particular, Plaintiffs have worked with many distributors to create and adopt "Best Practices" to avoid sourcing counterfeit textbooks.

### F.    Defendants' Unlawful Activities

59.    Through their enforcement efforts, Plaintiffs have confirmed that Defendants sell unauthorized and illegal counterfeit textbooks, including Plaintiffs' Authentic Works, on Amazon and other Online Marketplaces.   Plaintiffs have made purchases from Defendants' Online Storefronts, as described on Exhibit B, which confirm that Defendants distribute counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter, collectively, "Counterfeit Books," and each a "Counterfeit Book").

60.    Upon information and belief, through their Online Storefronts, Defendants target and ship their infringing textbooks to customers located in the United States, including New York. In fact, Amazon has confirmed that Defendants have sold copies of Plaintiffs' textbooks to

customers in New York.

61.    While Plaintiffs have identified some of the Counterfeit Books that Defendants have distributed, Plaintiffs have not identified all of them.  There are 106 unique titles (Authentic Works) in the list of Counterfeit Books on Exhibit B.  Exhibit B describes the Counterfeit Books Plaintiffs purchased from Defendants, but these are just examples of the counterfeit textbooks that Defendants are believed to have introduced into the market.  The list of nine Marks on Exhibit C likewise does not describe all the Marks that Defendants are infringing.  The Marks on Exhibit C represent the Marks on the Counterfeit Books that Plaintiffs purchased from Defendants and are just examples of the counterfeit Marks that Defendants are believed to have introduced into the market.  Moreover, the number of textbook titles Defendants have infringed is not the same as the number of counterfeit copies Plaintiffs received from Defendants' Online Storefronts.  Plaintiffs purchased and received from many of Defendants' Online Storefronts multiple counterfeit copies of individual textbook titles.

62.    Plaintiffs' discovery of Defendants' counterfeiting activities has been challenging and time-consuming.  Infringing activity typically takes place behind closed doors.  The Defendants here hide behind the anonymity of their Storefronts.  Customers receive little to no information on the Online Marketplaces identifying the sellers behind the Storefronts.

63.    Several Defendants operate their Online Storefronts as "FBA sellers," i.e., Defendants ship their textbooks to one of Amazon's fulfillment centers, and Amazon fulfills Defendants' orders on their behalf.  For example, Defendant Robert Meadows uses FBA to fulfill orders received by his Online Storefront, SwodieBooks.  Accordingly, the return address on packages received from SwodieBooks identifies one of Amazon's fulfillment centers.  Other Defendants, like Doe 10 operating the Info Avenue Storefront, fulfill at least some of their own

orders by shipping or arranging to have a third party ship books directly to customers.  However, even then, the return address—for a PostNet store in Charlotte, North Carolina—conceals the seller's true identity and address.

64.     Plaintiffs provided notice to Amazon of the Counterfeit Books they purchased from Defendants' Amazon and Abebooks Online Storefronts.  In response, Amazon provided contact information associated with Defendants' Amazon and Abebooks accounts for each of the Storefronts.  However, the contact information in Amazon's account records is only as good as the information sellers choose to provide when registering their accounts.  As Plaintiffs have discovered through prior enforcement efforts, counterfeiters often provide Amazon with fictitious names or addresses, as many Defendants here did.  Sellers need only have a valid bank account number to receive their sales proceeds and/or a valid credit card number to pay fees for selling on the marketplace.  For these reasons, Plaintiffs were unable to verify the identities and addresses of several Defendants who have been identified in this suit as Does despite Amazon's assistance in providing certain account registration information.  For example, the Murray Media Online Storefront is registered to Alan Murray; however, the address associated with the Abebooks account and used for return information is a UPS store.  Thus, without additional discovery, Plaintiffs have no way to verify whether Alan Murray is Doe 8's true identity or a pseudonym.  Similarly, the Anything You Can Imagine Storefront is registered to American Expedited Wholesale Inc.—a dissolved corporation.  The Amazon account information also identifies Bradley Young as an additional name on the Anything You Can Imagine account, but the account address (located in Memphis, Tennessee) is associated with co-working and virtual office space operated by Regus PLC.  Accordingly, Doe 1's true identity and location remains unknown to Plaintiffs.

65.     A number of Defendants appear to be working together.  Many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Online Storefronts offer similar inventories.  Moreover, Plaintiffs learned that some Online Storefronts were operated by the same Defendant or group of Defendants because the return address on packages received from seemingly unrelated Online Storefronts was the same.  For example, Plaintiffs believe that Doe 4 operates both the Clingonbling and Online mySolutions Online Storefronts because the return information on packages Plaintiffs received from both of them identified "Bizzare Crafts" and the same address in New Delhi, India.  Plaintiffs similarly believe the Online Storefronts operated by Defendants Carlos Corrasco and Spencer Rowles, Carla Rowles, Wesley Rowles, and Tierney Rowles are associated with one another.

66.     Plaintiffs believe other seemingly unrelated Online Storefronts are linked based on contact information Defendants used to register their Online Storefronts on Amazon and Abebooks.  While counterfeit sellers often use inaccurate or fictitious contact information to register their Online Storefronts, Plaintiffs nonetheless believe that certain Online Storefronts are operated by the same Defendant or group of Defendants because they used identical or nearly identical contact information—be it fictitious or not.  For example, after Amazon disclosed Defendants' contact information, Plaintiffs were able to determine that the Online Storefront Gift_Fair is also operated by Doe 4 because the associated Amazon account is registered to "Bizzare Crafts."  In addition, the primary address on the Amazon accounts associated with Gift_Fair and Clingonbling is the same, down to suite number, in Redlands, California.[2]  Because Gift_Fair utilizes the FBA service and, therefore, the return address on its packages identifies only

---

[2] The Redlands, California address appears to be shared warehouse space used by several business, including Shipmonk, which provides order fulfillment services to small businesses.

Amazon's fulfillment center in Lexington, Kentucky, Plaintiffs would not have made the link among these related Online Storefronts without the additional information from Amazon.

67.     Several other Defendants operate more than one Online Storefront, sometimes on the same or different Online Marketplaces.  These same Defendants, and probably others, are likely operating still other Online Storefronts, potentially on other e-commerce platforms, that Plaintiffs have not discovered yet.

68.     Many of the Counterfeit Books Plaintiffs received from Defendants were listed as used, but in "very good" or "like new" condition, despite being in brand-new condition.  For example, Plaintiffs purchased a copy of *Essentials of Intentional Interviewing: Counseling in a Multicultural World*, 3rd edition, ISBN 9781305087330, which was listed in "Used-Very Good" condition, from the SwodieBooks Online Storefront on Amazon.  But, rather than receiving the legitimate textbook, Plaintiffs received what appears to be a brand-new, counterfeit copy.

69.     Many Defendants' Storefronts contain reviews from customers complaining that they received what appears to be a counterfeit textbook, some even going so far as to note the poor quality of the book they received.  For example, one reviewer on Doe 4's Gift_Fair Storefront complained on April 9, 2018, "The book was very cheaply and poorly constructed. I believe it is a pirated copy."  Another complained on the Clingonbling Storefront on May 8, 2018, "The item is not genuine.  The book has unacceptable printing issues."  Yet, Doe 4 kept right on selling its counterfeits, including 20 counterfeit textbooks, across 18 different textbook titles, to Plaintiffs between April 13 and June 5, 2018.   Prime Box up likewise received a one-star review complaining, "The book looks like a bootlegged copy.  Different paper print, and quality material." And Doe 10's Info Avenue Storefront similarly received a review warning other buyers, "This company sells fake books."  There should be no doubt that Defendants read their reviews.  Doe 10

even went so far as to disagree with the review in reply to the comment.

70.    Upon information and belief, Defendants intentionally purchase counterfeit copies of Plaintiffs' Authentic Works at a materially cheaper price than they would be required to pay had they purchased Plaintiffs' Authentic Works directly from the respective publishers or from legitimate third-party sellers, pursuant to the custom and practice of the bookselling industry.  In doing so, Defendants deliberately evade legitimate sources, instead sourcing illegal and counterfeit copies of Plaintiffs' Authentic Works, in violation of Plaintiffs' intellectual property rights. Defendants then distribute the Counterfeit Books directly to individual consumers or other resellers on the Online Marketplaces.

71.    The Counterfeit Books Defendants distribute are different from and/or inferior to Plaintiffs' Authentic Works.  For example, the Counterfeit Books' binding, glue, paper, color and printing, among other traits, are different and inferior.  Based on the use of Plaintiffs' Marks, actual and prospective purchasers are likely to believe that the Counterfeit Books are authorized and legitimate copies of Plaintiffs' Authentic Works.  The Counterfeit Books' inferior quality weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  Plaintiffs' business reputations are further injured by having their trademarks and goodwill confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

72.    Defendants know or should know that the Counterfeit Books they distribute are infringing, including based on their "too good to be true price" and inferior quality.

73.    Defendants knowingly direct, supervise, and control the distribution of the Counterfeit Books, and have a direct financial interest in, and stand to gain a direct financial benefit from, their deliberately infringing activity.

74.    By engaging in the illegal conduct alleged above, in addition to directly organizing

and effectuating such infringing activities, Defendants also personally induce, cause, and materially contribute to infringing conduct by others, including resellers to whom Defendants likely sell the Counterfeit Books. Such resellers then further distribute the Counterfeit Books.

75. Defendants' intentional and deceitful misconduct has likely resulted in lost profits to Plaintiffs and has damaged the inherent value of Plaintiffs' Authentic Works and Marks, impaired Plaintiffs' reputations for providing high-quality higher education textbooks, diluted Plaintiffs' brands and the goodwill associated with them, all of which negatively affects Plaintiffs' relationships with distributors, authors, professors and other teachers, and students.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

76. Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1- 75.

77. Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

78. At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

79. Beginning on an unknown date but at least since June 2017 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, have infringed Plaintiffs' copyrights. Specifically, Defendants infringed Plaintiffs' exclusive rights to

distribute their copyrighted works.  They did so by, among other things, selling the Counterfeit Books for profit, without Plaintiffs' permission, license, or consent, in violation of 17 U.S.C. § 106.

80.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had actual and/or constructive knowledge that their conduct was unlawful and in violation of Plaintiffs' copyrights.  Defendants acted intentionally and in reckless disregard of Plaintiffs' copyrights.

81.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

82.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.   Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

83.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1- 75.

84.     This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for counterfeiting of Plaintiffs' Marks.  At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective Marks, which are valid and protectable trademarks that are registered with the United States Patent and Trademark Office.

85.     Beginning on an unknown date but at least since June 2017 and continuing to the

present, Defendants have infringed Plaintiffs' federally registered Marks through their use in commerce, without Plaintiffs' consent, of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Books, and such use is likely to cause confusion, to cause mistake, and/or deceive the public.

86.     The spurious, counterfeit marks on the Counterfeit Books that Defendants have distributed are identical to and/or substantially indistinguishable from Plaintiffs' Marks that appear on Plaintiffs' Authentic Works.

87.     Defendants have acted intentionally and in reckless disregard of Plaintiffs' trademark rights.  Defendants are intentionally using Plaintiffs' Marks on unauthorized products and infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

88.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had actual and/or constructive knowledge that their conduct was unlawful and would cause confusion, mistake, or deception.

89.     As a result of Defendants' unlawful conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

90.     Defendants' counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs, including to their reputation and goodwill, for which Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendants from continuing their counterfeiting activities, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further counterfeiting.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.      Judgment on each of the claims set forth above, including that Defendants' infringement of Plaintiffs' Authentic Works and Marks was intentional and willful.

2.      Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.      An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Books with documents relating to all such purchases and sales;

4.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.      An order enjoining Defendants and those in active concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.      An order enjoining Defendants and those in active concert with them from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

7.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful use of their trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

8.      An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations, including confusingly similar

variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

9.     Prejudgment and post-judgment interest at the applicable rate;

10.    Plaintiffs' attorney's fees, expenses, and costs of suit; and

11.    Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

DATED:  August 14, 2018                    Respectfully submitted,

                                           By: _____
                                           Matthew J. Oppenheim
                                           Kerry M. Mustico
                                           Matthew I. Fleischman
                                           OPPENHEIM + ZEBRAK, LLP
                                           5225 Wisconsin Avenue NW, Suite 503
                                           Washington, DC 20015
                                           Tel:  (202) 480-2999
                                           Fax:  (866) 766-1678
                                           matt@oandzlaw.com
                                           kerry@oandzlaw.com
                                           fleischman@oandzlaw.com

                                           *Attorneys for Plaintiffs*