UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEARSON EDUCATION, INC. et al., <br><br>                         Plaintiffs,<br>  -against-<br><br>DOE 1 D/B/A ANYTHING YOU CAN IMAGINE et al.,<br><br>                         Defendants. | **Case No.: 1:18-cv-07380-PGG** |

### DECLARATION OF JENNIFER GROOMS IN SUPPORT OF DEFENDANT BORGASORUS BOOKS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Jennifer Grooms, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am a co-founder of Borgasorus Books, Inc. ("BBI"), a Defendant in the above-referenced action. My current title is President and Chief Executive Officer.

2. This declaration is respectfully submitted in support of BBI's Opposition to Plaintiffs' Motion for a Preliminary Injunction. I make this Declaration based on personal knowledge, my review of BBI records, and, where indicated, on information and belief.

3. BBI is a family-owned and operated Missouri corporation.

4. BBI has been in business for over a decade and currently employs eighteen (18) people.

5. In my role as President and CEO, I oversee the management, accounting, and listing and shipping of inventory of BBI, among other things.

6. BBI purchases used books, including entire lots of books from legitimate third party sellers pursuant to the custom and practice of the bookselling industry.

1

7. For years, BBI purchased books from Missouri Book Company ("MBS"), a subsidiary of Barnes & Noble. Barnes & Noble is the largest national bookseller chain with operations at over 750 college campuses and serving over 6 million students. MBS has adopted the anti-counterfeit best practices set forth on StopCounterfeitBooks.com.

8. In addition, BBI purchases books from textbook wholesalers in the United States, from schools and school districts, from students, from eBay, and from other sources for eventual resale to consumers.

9. Upon receipt of used books from our sources, BBI undertakes a comprehensive review of the books to parse out books that cannot be sold and/or have suspicious lineage. The procedures adopted by BBI include the "Best Practices" publicized on the StopCounterfeitBooks.com website.

10. The StopCounterfeitbooks.com website is endorsed by Plaintiffs in this action, Cengage, Pearson, McGraw-Hill, Elsevier and MacMillan (the parent of plaintiff Bedford Freeman). As such, these publishers all endorse the best practices to ensure that authentic books are sold.

11. The books BBI purchases are resold to consumers via platforms such as Abebooks.com, Alibris.com, and Valore.com.

12. Valore, has adopted the Anti-Counterfeit Best Practices of StopCounterfeitBooks.com.

13. The allegations that BBI deliberately evades legitimate sources and instead sources illegal and counterfeit copies of Plaintiffs' works is false. BBI undertakes significant efforts to ensure the books it purchases are authentic. It does not source books from China or suspicious sources.

14. BBI maintains a corporate culture of weeding out any suspicious books. BBI provides employees with training on how to identify books that are not authentic, including a written training sheet. Specifically, it employs a multi-tier process for identifying books that are potentially not authentic. First, the books are measured and weighed, with the measurements and weight then compared to a listing of the book on the publisher's website or other seemingly legitimate source. Second, the font, images, and binding of the books are examined for clarity and craftsmanship. Any book that is identified as potentially not authentic is not listed for sale and is designated for recycling. This process is repeated such that there are different evaluations performed; when the book is initially inspected, when it is listed, and when the book is shipped out for a sale.

15. BBI maintains a list of approximately 300,000 books in inventory at the current time.

16. I understand that the Plaintiffs are claiming they made six purchases of counterfeit books from BBI, including one title that was purchased twice. It is my understanding that these books were attributed to only three of the five plaintiffs. No books from Elsevier or Bedford were implicated.

17. It is my understanding, based on communications with MBS, that Plaintiffs discovered through other, prior litigation that MBS may have sold allegedly counterfeit books to BBI, yet never advised BBI that this occurred.

18. It is my understanding, based on communications with MBS, that Plaintiffs test purchased targeted titles that they already learned through this prior litigation had been counterfeited by third parties (not including BBI) and made their way into the stream of commerce.

9270484v.1

19.     BBI records indicate that while the Plaintiffs claim they purchased six counterfeit books, they actually made at least twenty-one (21) targeted purchases from BBI, dating back to at least as early as June 6, 2017.  These 21 purchases were presumably ones that Plaintiffs believed would all be counterfeit.

20.     I understand that Plaintiffs have alleged that the purchases from BBI underlying Plaintiffs' claims in this action are limited to transactions occurring on the following dates:  July 24, 2017, March 15, 2018, April 26, 2018, May 22, 2018, July 17, 2018, and July 17, 2018.

21.     From among the hundreds of thousands of books BBI has listed in inventory, and the twenty-one (21) purchases, I understand that the Plaintiffs have allegedly identified only six (6) transactions involving five (5) titles they claim are counterfeit.

22.     I have consulted BBI records, which indicate that BBI does not have any copies of the five titles underlying Plaintiffs claims in inventory as of September 5, 2018.

23.     BBI has not and does not purposefully or negligently import, offer for sale, sell, or distribute counterfeit books.

24.     BBI did not know the books that are alleged to be counterfeit were counterfeit.

25.     The Temporary Restraining Order that was put in place is harming BBI and threatens the existence of its legitimate business.

26.     BBI takes great care in weeding out any suspect book, and any book that does not pass the tests that comply with the StopCounterfeitBooks.com Best Practices.  However, not unlike any supply chain, a counterfeit could infiltrate the supply if it passes the Plaintiffs' own suggested tests.  I believe that any injunction that will be entered should only enjoin BBI from knowingly selling counterfeit books.  While the sale of a counterfeit book might still be

technically infringing, the unknowing and inadvertent sale should not cause me to violate an injunction.

27. The vast majority of books the BBI purchases, especially the bulk lots, are discarded and sent for recycling. Currently BBI, has hundreds of thousands of books waiting to go to a recycler. However, the injunction will prevent the transfer of these books for recycling. As such, the storage of these books is occupying more and more of our warehouse every day and BBI is running out of storage space. These books are not going to be sold and requiring BBI's storage of same is adversely impacting its ability to do business.

28. BBI is interested in proceeding with its lawful business as soon as possible and would like to do so unrestrained. It will continue to follow the Best Practices endorsed by the Plaintiffs and has nothing to hide. It is not a business that needs to be enjoined.

I hereby declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Dated: September 5, 2018

*Jennifer Grooms*

Jennifer Grooms

9270484v.1