

Adam Bialek
212.915.5143 (direct)
917.538.0616 (mobile)
Adam.Bialek@wilsonelser.com

September 18, 2018

]**By ECF**
The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

| Re: | *Pearson Education Inc. et al. v. Doe 1 d/b/a Anything You Can Imagine et al.* |
| --- | --- |
|  | Case No.: 18 Civ. 7380 (PGG) |
| File No: | 14320.00033 |

Dear Judge Gardephe:

      We represent Defendant Borgasorus Books, Inc. ("Borgasorus") in the above-referenced matter. We respectfully submit this letter in opposition to Plaintiffs Pearson Education, Inc., Cengage Learning, Inc., Elsevier Inc., McGraw-Hill Global Education Holdings, LLC, and Bedford Freeman & Worth Publishing Group, LLC ("Plaintiffs") Letter Motion for Leave to file Proposed Preliminary Injunction (Docket Entry No. 62) ("Motion"). As Plaintiffs did in seeking and obtaining their Temporary Restraining Order ("TRO"), Plaintiffs have requested overbroad relief and they make misrepresentations in this Motion requiring correction.

      Plaintiffs brought this case against twenty-two (22) different defendants purportedly acting in concert with one another, alleging mass infringement of intellectual property owned by five (5) distinct entities, and obtained the extreme relief of an ex parte TRO enjoining the sale of titles of all five (5) Plaintiffs, an asset freeze, and an expedited discovery order on the basis of these representations. In reality, the evidence Plaintiffs had in hand at the time of filing implicated only one of the 22 defendants (not BBI) in sales of books of all five of the plaintiffs. See ECF No. 1-2 (attributing sales of books of particular Plaintiffs to particular Defendants, attributing only Murray Media with sales of books of all five plaintiffs); ECF No. 7-1 (confining allegations against BBI to only three plaintiffs). The practical effect of Plaintiffs misrepresentations was that twenty-one (21) defendants were effectively restrained from selling books of Plaintiffs in the absence of any evidence of infringement of works owned by those Plaintiffs.

      Specifically, a TRO was initially entered against BBI as to the sale of books of Plaintiffs Elsevier Inc. and Bedford, Freeman & Worth Publishing Group, LLC despite Plaintiffs presenting

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Indiana • Kentucky
Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Missouri • New Jersey • New Orleans • New York • Orlando • Philadelphia • Phoenix
San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

wilsonelser.com

9297180v.1



no evidence that BBI ever sold allegedly counterfeit Elsevier and Bedford books.  It is unclear how Plaintiffs could seek and obtain a TRO consistent with their obligations under Rule 11 in the absence of such evidence, and this TRO has since been properly dissolved.  Indeed, this Court found Plaintiffs unlikely to succeed on claims by Plaintiffs with no accompanying evidence in the form of test purchases of allegedly counterfeit goods, and denied a preliminary injunction as to those Plaintiffs. ECF No. 59 (referencing statements in open Court).  It should also be noted that the Plaintiffs had secured the relief without having to file a bond, and there has been no recognition that the Defendants have been damaged by the TRO by those Plaintiffs.

Despite Plaintiffs seeking injunctive relief with respect to certain Plaintiffs without making any evidentiary showing of infringement, BBI has negotiated in good faith with Plaintiffs' counsel to reach a resolution as to an injunction.  In a further show of good faith, Defendant BBI even offered to *voluntarily* include the other two plaintiffs in the process of inspecting BBI's inventory, and has produced a copy of its inventory including the books of Elsevier and Bedford despite the fact that the TRO as to these entities has been dissolved, and this Court's finding that these Plaintiffs with no evidence of test purchases failed to show a likelihood of success on the merits of any claims so as to warrant injunctive relief.

As things currently stand, the only item at issue is which side (Plaintiffs, or BBI) will bear the costs associated with taking an inventory of 250,000 books in BBI's warehouse that, pursuant to ordinary course of business, it designated for recycling and/or destruction due to the books unsaleable condition.  These books were never listed for sale (i.e., no violation of the Copyright Act has occurred with respect to these books).  Because they were not to be listed for sale, time was not devoted to cataloguing their title, publisher, ISBN, or anything of the like.

**To be clear, at no time was BBI advocating for the destruction of counterfeit books**.  It has always been BBI's position that should Plaintiffs desire, they are free to take possession of the 250,000 books and inspect them at their leisure.  It is not BBI's burden to maintain these books in perpetuity, especially when there is no knowledge of any specific counterfeit books being contained therein, let alone counterfeit books of the Plaintiffs.

The three Plaintiffs who purchased counterfeit books from BBI (a total of six books, under five titles, out of at least 26 known purchases of targeted ISBN numbers) produced evidence of 1 (McGraw Hill) , 2 (Pearson) or 3 (Cengage) counterfeit books of the Plaintiffs.  Yet, Plaintiff wants to shift the cost of going through approximately 250,000 books to the Defendant BBI even though the books were not going to be sold.

As BBI previously submitted to the Court in a declaration of Jennifer Grooms, BBI takes in large volumes of books from several sources.  ECF No. 38.  A large majority of the books are not listed for sale (up to 90% from some sources) and are instead designated for recycling.  Prior to the TRO, BBI had discarded any books it could not sell and it did not differentiate between books that were too old, too damaged, or potentially problematic.  It did not believe it had such an obligation and it was not interested in selling anything but authentic books. BBI has limited space in its warehouse and in order to continue to operate it needs to clear out space from its warehouse. The volume of books it is storing because it cannot send them to recycling is crippling BBI's ability to purchase new books.  In essence, it is challenging its ability to do business.  BBI estimates that there are approximately 7 truckloads worth of books (approximately 250,000) that


are delegated for recycling. These books were never logged in as they were not books BBI ever intended to list for sale. Insofar as they were not going to be listed, BBI never catalogued them by title, ISBN, or publisher, or kept any other record of any individual book delegated for recycling.

Logically, the 250,000 books at issue could fall into essentially three (3) buckets:

(1) Books that are not Plaintiffs (no relevance to the prosecution of Plaintiffs' claims);

(2) Genuine books of the plaintiffs (no relevance to the prosecution of Plaintiffs' claims); and

(3) Books of plaintiffs alleged to be counterfeit that BBI simply acquired in its bulk acquisition, but did not sell or otherwise take any action that would violate the Copyright Act (no relevance to the prosecution of Plaintiffs' claims against BBI).

Accordingly, the only possible bearing on this case the inventory could <u>hypothetically</u> have is evidence of infringement by a third party, not BBI.

Given that a connection to this case of any book identified among the 250,000, if any, would be so attenuated, we believe it is Plaintiffs' burden to take possession of the inventory, and conduct any inspection they desire. BBI repeatedly offered to throw open its doors to Plaintiffs and make its inventory available for such inspection within the timeframe provided in the proposed injunction. This goes above and beyond what BBI is required to do. *See Gucci Am, Inc. v. Ashley Reed Trading, Inc.*, No. 00 Civ. 6041 (RCC) (JCF), 2001 U.S. Dist. LEXIS 15638, *2 (S.D.N.Y. Oct. 4, 2018) (finding plaintiff Gucci had "no basis" for inspecting defendant's entire inventory for products bearing the "Gucci" mark when Gucci only identified two items as counterfeit and thus had no reasonable basis for alleging any additional items are not genuine). Plaintiffs declined BBI's more than generous offer. BBI offered to allow Plaintiffs to remove the books to a warehouse of its choosing, and then allow it to inspect the books, but Plaintiffs have refused.

BBI is incurring thousands of dollars per month in costs related to warehousing books with minimal, if any, relevance to this case. In addition, the physical space these books are taking up is preventing BBI from bringing new books into the warehouse.

BBI should not be required to continue to bear the costs of Plaintiffs multi-level hypothetical—that it may find books, that are the Plaintiffs, that may be alleged to be counterfeit. If Plaintiffs want to come inspect this inventory, they are free to do so. Alternatively, they may take possession of the inventory immediately and inspect it at their leisure.

As such, should this Court believe that the entry of an injunction is warranted, we submit the last version of the negotiated draft injunction and consent order concurrently with this letter as Exhibit 1. Note, specific changes include the following:

1) We have removed attorneys from the injunction. There is no need to enjoin the Defendant's counsel. We have not engaged in the purchase or sale of the books and it is overreaching to include attorneys. To the extent that Plaintiffs are concerned that the



- 4 -

    attorneys could otherwise do what the Defendant could not, the injunction has language attaching to parties who act in concert with the Defendant.

2) We have voluntarily offered to include the other 2 plaintiffs (Elsevier and Bedford) for inspection purposes.
3) We have added reasonable deadlines for the Plaintiffs to go through the BBI Inventory that they want to inspect.
4) We allow for the recycling of the books previously designated for destruction. Again, if Plaintiffs want these books to be kept or inspected, we would be happy to provide them with access to inspect the books concurrent with the other inspection, or to take possession of them and inspect them at Plaintiffs' leisure.

We have directed BBI to sequester any new books that come in that they suspect may be counterfeit and BBI will make those available for inspection as well. BBI believes it has been more than fair in its proposal and seeks the Court's consideration of entering the consent injunction and order it submits.

    Should the Court believe that a conference to discuss the books designated for destruction is worthwhile, we would be happy to cooperate. I will, however, be out of the office for Yom Kippur and will return on Thursday. If more immediate response is needed, my colleague, Kerianne Losier, is prepared to participate in such a conference.

Thank you in advance for your consideration with respect to this matter.

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP


/s/  Adam Bialek



cc:  All counsel of record via ECF notification

9297180v.1