# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
LAWRENCE S. BADER
BENJAMIN S. FISCHER
CATHERINE M. FOTI
PAUL R. GRAND
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
JODI MISHER PEIKIN
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

bfischer@maglaw.com
(212) 880-9585

COUNSEL
JASMINE JUTEAU
CURTIS B. LEITNER
DANIEL F. WACHTELL
––––––
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

March 8, 2019

**BY ECF**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

> Re: *Pearson Educ., Inc. et al. v. Doe 1 d/b/a Anything You Can Imagine, et al.*,
> No. 1:18-cv-07380 (PGG)

Dear Judge Gardephe:

We represent Defendants Flipping Pages, Inc. ("Flipping Pages"), Benjamin Barrett Roberts and Cameron Wesley Roberts (together, the "Roberts Brothers") in the above-referenced action.  By letter dated February 19, 2019, we requested a pre-motion conference with the Court in anticipation of moving to dismiss Plaintiffs' Complaint as to the Roberts Brothers pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (ECF No. 107.)  On February 22, 2019, Plaintiffs responded by moving for leave to amend their Complaint.  (*See* ECF No. 110.)  Plaintiffs claim that an amendment is necessary to identify the true names of certain "Doe" defendants in the case (an issue not relevant to Flipping Pages and the Roberts Brothers), and that the additional allegations purportedly "supplement[ ] and clarif[y] certain factual allegations" in the original Complaint.  (ECF No. 111 at 2-3.)  Plaintiffs believe that the factual allegations in their proposed amendment overcome the basis for the Roberts Brothers' contemplated motion to dismiss.  (*See* ECF No. 114 at 3.)  Although neither Flipping Pages nor the Roberts Brothers opposes Plaintiffs' motion for leave to amend the Complaint, the proposed additional facts are insufficient to overcome the legal deficiencies as to the Roberts Brothers as set forth in our February 19 letter.  As explained in more detail below, the proposed Amended Complaint does not contain sufficient

---

[1] Flipping Pages filed an Answer to the Complaint on February 19, 2019.  (ECF No. 109.)

Morvillo Abramowitz Grand Iason & Anello P.C.

Hon. Paul G. Gardephe
March 8, 2019
Page 2

allegations to state a claim against the Roberts Brothers in their individual capacities. Accordingly, we respectfully request that the Court proceed with the pre-motion conference requested in our February 19 letter.

Under the correct Rule 12(b)(6) standard,[2] the Amended Complaint should be dismissed as to the Roberts Brothers.  Tellingly, the handful of new allegations against the Roberts Brothers in the Amended Complaint does not even track the legal requirements for individual liability in copyright and trademark actions.  (*See* ECF No. 110-1 ¶¶ 118-24.)  As for contributory copyright infringement, the Amended Complaint does not allege that the Roberts Brothers had knowledge of, a "high degree of personal involvement in," or were "moving, active, conscious force[s] behind" directly infringing activity. *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 618-19 (S.D.N.Y. 2013).  Nor does the Amended Complaint allege that the Roberts Brothers had "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so," as required to impose vicarious liability. *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016).  As for individual trademark liability, the Amended Complaint does not allege, as it must, that the Roberts Brothers "direct[ed], control[led], ratifie[d], participate[d] in, or [were] the moving force[s] behind the infringing activity." *Louis Vuitton Malletier SA v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485, 501 (S.D.N.Y. 2015).

---

[2] In their response to our request for a pre-motion conference, Plaintiffs misrepresent the basic Rule 12(b)(6) standard.  Citing stale case law, Plaintiffs incorrectly assert that the Court cannot grant a motion to dismiss "unless 'it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'"  (ECF No. 114 at 1 (quoting *Tangorre v. Mako's, Inc.*, 2002 WL 313156, at *2 (S.D.N.Y. Jan. 30, 2002)).)  As this Court has recognized, however, the U.S. Supreme Court "explicitly abrogated" the "no set of facts" language more than a decade ago in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Pasternack v. Lab. Corp. of Am.*, 2011 WL 3478732, at *4 n.7 (S.D.N.Y. Aug. 1, 2011) (Gardephe, J.).  After *Twombly*, the correct question under Rule 12(b)(6) is whether a pleading alleges enough facts "to 'state a claim for relief that is plausible on its face.'" *Id.* at *4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations," and thus will not defeat a motion to dismiss. *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008) (alteration in original).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Paul G. Gardephe
March 8, 2019
Page 3

Rather than adhering to the above-referenced Southern District pleading requirements associated with the imposition of personal liability, the proposed Amended Complaint merely seeks to add the following allegations:

a)   The Roberts Brothers are principals of Flipping Pages and operate its storefront on Amazon.com (ECF No. 110-1 ¶¶ 118, 120);

b)   Plaintiffs purchased "20 counterfeit copies of 19 Authentic Works from the FlippingPages Storefront on Amazon" (*id.* ¶ 119);

c)   Flipping Pages has sold more than $20 million worth of Plaintiffs' textbooks "in the last few years" (*id.* ¶ 120);

d)   Flipping Pages participates in and sources inventory through the "Amazon Trade-In Program," a capitalized term Plaintiffs do not define or otherwise describe in the Amended Complaint (*id.* ¶ 121);

e)   Alleging "upon information and belief" that other defendants in the case made cash purchases of an unidentified number of allegedly counterfeit textbooks from the Virginia warehouse of a non-party charitable organization, Shared Knowledge Literacy Foundation (operated by the Roberts Brothers) (*id.* ¶ 122);

f)   Plaintiffs sent an infringement notice to Amazon in June 2018, after which Flipping Pages allegedly re-sold additional books, none of which the Amended Complaint alleges were counterfeit (*id.* ¶ 123); and

g)   Based on Plaintiffs' identification and inspection of a discrete number of books in expedited discovery (books that Flipping Pages could have potentially made available for re-sale on Amazon, but were not actually sold), Plaintiffs allege that 35% of those inspected books were allegedly counterfeit (*id.* ¶ 124).

Taken together, Plaintiffs' additional proposed allegations are insufficient to establish individual liability as to the Roberts Brothers, as they do not allege the kind of involvement by the Roberts Brothers individually that would be required to trigger potential individual liability. Although Plaintiffs cite several cases in an attempt to convince the Court that the Amended Complaint's proposed allegations adequately state a claim for personal liability, each of Plaintiffs' cases is plainly distinguishable.

For example, Plaintiffs cite *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009), for the proposition that "turning a 'blind eye' to infringement can satisfy the knowledge requirement" of contributory copyright liability.  (ECF No. 114 at 2.)  That case,

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Paul G. Gardephe
March 8, 2019
Page 4


however, involved an online file-sharing website, Usenet.com, operated by a company whose "own employees overtly acknowledg[ed] the infringing purpose" for which the site was used. 633 F. Supp. 2d at 151-52.  The court specifically noted that the individual defendants materially contributed to the infringements at issue by "literally creat[ing] the 'site and facilities' that . . . subscribers use[d] to directly infringe copyrights." *Id.* at 155.  In stark contrast to Plaintiffs' proposed Amended Complaint, the operative complaint in the *Usenet.com* case alleged that the individual who owned and operated Usenet.com was "the moving, active and conscious force behind all of [the company's] infringing activities." *Arista Records LLC v. Usenet.com, Inc.*, No. 07-cv-8822 (HB), ECF No. 57 ¶ 17 (S.D.N.Y. Sept. 17, 2008).  Plaintiffs' proposed Amended Complaint does not allege facts that are even remotely comparable to the circumstances that led the court to impose individual liability on the corporate defendant's officers in the *Usenet.com* case.

Similarly, Plaintiffs cite *A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), in support of the notion that vicarious copyright liability attaches where an individual defendant's economic interests are "intertwined with the direct infringer's." (ECF No. 114 at 2.)  But the *Napster* case also involved an online file-sharing application that specifically catered to and "provide[d] 'the site and facilities' for direct infringement." 239 F.3d at 1022 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)).  In *Napster*, the court noted that "financial benefit" is established for purposes of individual vicarious liability where "the availability of infringing material acts as a 'draw' for customers." *Id.* at 1023.  This was true as to Napster, which users joined specifically for the purpose of accessing the "infringing files on its system." *Id.* at 1023-24.  In this case, Plaintiffs' proposed Amended Complaint does not allege that the Roberts Brothers use the availability of counterfeit textbooks as a "draw" to attract customers to Flipping Pages.

As for their argument that the Roberts Brothers should be held personally liable for trademark infringement, Plaintiffs cite *Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F. Supp. 3d 137 (E.D.N.Y. 2016), and *Cartier, a Division of Richemont North America, Inc. v. Samo's Sons, Inc.*, 2005 WL 2560382 (S.D.N.Y. Oct. 11, 2005).  But these cases are inapposite and actually make clear that that the allegations as to the Roberts Brothers are legally insufficient. *See Innovation Ventures*, 176 F. Supp. 3d at 168 (individual officer "played an *essential role* in the counterfeiting scheme," including traveling overseas to purchase materials and generating 4.3 million counterfeit energy drinks (emphasis added)); *Cartier*, 2005 WL 2560382, at *10 (citing *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899,

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Paul G. Gardephe
March 8, 2019
Page 5

913-14 (E.D.N.Y. 1988), in which individual defendants approved counterfeit sales after "personally receiv[ing]" and "personally examin[ing] the goods").[3]

For these reasons, we respectfully submit that Plaintiffs' proposed Amended Complaint does not contain allegations that state claims against the Roberts Brothers in their individual capacities.  Accordingly, the Court should allow the Roberts Brothers to file their contemplated motion to dismiss.

We look forward to addressing this matter with Your Honor at a pre-motion conference.

Respectfully submitted,


/s/ Benjamin S. Fischer
Benjamin S. Fischer

cc:     Plaintiffs' counsel (by ECF)

---

[3] The other cases Plaintiffs cite in defense of their pursuit of the Roberts Brothers are all distinguishable and do not support sustaining the Amended Complaint as a basis to state claims against the Roberts Brothers in their individual capacities.  *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 924 (2005) (defendants "took active steps to encourage infringement"); *Fonovisa*, 76 F.3d at 264-65 (operators of flea market "disregarded its vendors' blatant trademark infringements with impunity" and protected infringers' identities); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1163 (2d Cir. 1971) (describing defendants' "pervasive participation in" infringement); *Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 526 & n.220 (S.D.N.Y. 2014) (complaint alleged "willful and knowing sale of [counterfeit] jewelry products" and company president's "active assistance, cooperation, acquiescence, and procurement"); *Arista Records, Inc. v. Flea World, Inc.*, 2006 WL 842883, at *15 (D.N.J. Mar. 31, 2006) (operators of flea market "personally visited each vendor's booth" to check for prohibited items like firearms, but intentionally overlooked thousands of counterfeit CDs and tapes).