**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                       :
PEARSON EDUCATION INC., et al.,     :
                       :
                Plaintiffs,     :     18-CV-7380 (MMG) (OTW)
                       :
       -against-           :
                       :     **REPORT & RECOMMENDATION TO THE**
DOE 1, et al.,               :     **HONORABLE MARGARET M. GARNETT**
                       :
             Defendants.     :
                       :
----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**I.      Introduction**

On August 15, 2018, Pearson Education, Inc. ("Pearson"), Cengage Learning, Inc.

("Cengage"), Elsevier Inc. ("Elsevier"), McGraw Hill LLC, formerly McGraw-Hill Global Education

Holdings, LLC ("McGraw Hill"), and Bedford, Freeman & Worth Publishing Group, LLC

("Macmillan Learning"), ( collectively, "Plaintiffs"), filed a Complaint alleging copyright and

trademark infringement against multiple parties. (ECF 1). Following expedited discovery,

Plaintiffs filed an Amended Complaint on May 2, 2019, against, *inter alia*, Bradley Young,

Bizarre [sic] Crafts Pvt. Ltd., Pradeep Kumar Sahni, Diwakar Kumar, Abhishek Kumar Singh,

Irshad Ahmed, Sushil Kumar Sharma, Niya Wood, Gilson Jose Goncalves Filho, Anthem, LLC, and

Tracy W. Jernigan (collectively, the "Defendants"). (ECF 128). On November 25, 2020, Judge

Gardephe[1] entered default against the remaining Defendants and referred the case to me for an inquest. (ECF 229 at 2).[2]

For the reasons below, I recommend that default judgment be entered for the Plaintiffs against Defendants; that damages be awarded in the amount of **$27,690,000** plus post-judgment interest to be calculated in accordance with federal law; and an injunction be issued permanently enjoining Defendants, their agents, and all those in active concert or participation with them from further infringing Plaintiffs' copyrights and trademarks.

II.     **Background**

a.  **Factual Background**

Plaintiffs are educational publishers of traditional and digital textbooks. (ECF 249 ¶¶ 1-2). Plaintiffs own the copyrights, or are the owners of the exclusive rights, in the works listed in the Amended Complaint (hereinafter, the "Authentic Works"); and Plaintiffs, or their affiliates, have registered their respective copyrights in the Authentic Works. (ECF 250 at Ex. 1). The Authentic Works bear trademarks and service marks (hereinafter, the "Marks" or "Plaintiffs' Marks"), which Plaintiffs have registered on the Principal Register of the United States Patent and Trademark Office. (ECF 250 at Ex. 2). Plaintiffs own and are the exclusive licensees of the Marks. *Id.*

---

[1] This case was reassigned to the Honorable Margaret M. Garnett on March 11, 2024.

[2] A number of Defendants were voluntarily dismissed from the case before entry of default judgment. Additionally, in the interim period between when the case was referred for an inquest and when Plaintiffs filed their inquest submissions, Defendants Bradley Young and Alan Murray were voluntarily dismissed from the action. *See* ECF Nos. 245, 242, 237. The remaining Defendants for the purposes of this inquest are Bizzare Crafts Pvt. Ltd., Pradeep Kumar Sahni, Diwakar Kumar, Abhishek Kumar Singh, Irshad Ahmed, Sushil Kumar Sharma, Niya Wood, Gilson Jose Goncalves Filho, Anthem, LLC, and Tracy W. Jernigan.

Defendants distributed and sold, through their storefronts on Amazon and other online marketplaces, what appeared to be copies of Plaintiffs' textbooks without the Plaintiffs' permission, license, or consent. (EFC 249 at ¶ 22-27). Before bringing this suit, Plaintiffs made test purchases from Defendants' online stores of forty-six unique textbooks titles published by Plaintiffs that Defendants infringed under both copyright and trademark law (collectively, the "Counterfeit Titles" and each a "Counterfeit Title"). (ECF 249 at ¶ 25). Plaintiffs also learned that certain Defendants were distributing multiple copies of each Counterfeit Title (collectively, the "Counterfeit Books" and each a "Counterfeit Book") at below-market prices. (ECF 249 at ¶ 26, 58).

### i. Defendants Bizzare Crafts Pvt. Ltd., Pradeep Kumar Sahni, Diwakar Kumar, Abhishek Kumar Singh, Irshad Ahmed, and Sushil Kumar Sharma

Before filing suit, Plaintiffs purchased a total of 21 books, encompassing 19 Counterfeit Titles, from Bizzare Crafts Pvt. Ltd., Pradeep Kumar Sahni, Diwakar Kumar, Abhishek Kumar Singh, Irshad Ahmed, and Sushil Kumar Sharma (collectively, the "Bizzare Crafts Defendants"). (ECF 249 at ¶ 31). Of the 19 Counterfeit Titles, Plaintiffs found that 18 had been infringed after the Court issued its TRO. (ECF 250 at ¶ 19); (ECF 2 at 6). The Bizzare Crafts Defendants each participated in, exercised control over, and benefited from the infringing activities on their online marketplaces, namely: Gift Fair, Clingonbling, and Online mySolutions ("Online Storefronts"). (ECF 250 at ¶ 17). Pradeep Kumar Sahni is the "Merchant Customer Name" on the Clingonbling Storefront; Diwakar Kumar and Abhishek Kumar Singh are additional names on the Gift Fair Storefront; Irshad Ahmed is the Merchant Customer Name on the Online

mySolutions Storefront; and Sushil Kumar Sharma is an additional name on the Online mySolutions Storefront. (ECF 250 at ¶ 17).

The Bizzare Crafts Defendants' shipments of counterfeit textbooks from India have been seized at least once by U.S. Customs and Border Protection ("CBP"). (ECF 250 at ¶ 18). In August 2018, CBP notified Plaintiff McGraw Hill that it had seized a shipment of textbooks from "Clingonbling" in India intended for Amazon's warehouse, and that the textbooks displayed counterfeit reproductions of McGraw Hill's Marks. (ECF 250 at ¶ 18). Further, customer reviews found on the Bizzare Crafts Defendants' Online Storefronts have publicly indicated that their books are not authentic. (ECF 250 at ¶ 19). For example, one of the customer reviews on the Gift Fair Storefront, dated April 9, 2018, complained: "the book was very cheaply and poorly constructed. I believe it is a pirated copy." (ECF 250 at ¶ 19). Another reviewer posted on the Clingonbling Storefront on May 8, 2018: "the item is not genuine. The book has unacceptable printing issues." (ECF 250 at ¶ 19). The Bizzare Crafts Defendants continued selling these products after the reviews were posted. (ECF 250 at ¶ 19).

Data produced by Amazon showed that the Bizzare Crafts Defendants sold over $115,000 worth of goods through their Amazon storefronts identified in the Complaint alone. (ECF 250 at ¶ 24). The Bizzare Crafts Defendants have continued selling Counterfeit Books after the TRO was entered. (ECF 250 at ¶ 21).

### ii.  Defendant Niya Wood

Before filing suit, Plaintiffs Pearson, Cengage, and McGraw Hill purchased a total of seven Counterfeit Books, encompassing six separate Counterfeit Titles from Defendant Niya

Wood's online business "Cpmom." (ECF 250 at ¶ 23). Wood sells counterfeit textbooks through other marketplaces or sites in addition to Cpmom. (ECF 250 at ¶ 24). Six different distributors turned over to Plaintiffs eight textbooks purchased from Wood which were ultimately found to be counterfeit. (ECF 250 at ¶ 24). Wood sold one of these books after the preliminary injunction was issued in this case. (ECF 250 at ¶ 24).

Since the injunction was entered, Wood has also engaged in other infringing sales. (ECF 250 at ¶ 25; ECF 218, Ex. 5). Wood sold copies of Plaintiff Pearson's and Plaintiff Cengage's textbooks to Denis Okhman, a defendant in *McGraw Hill LLC v. Doe 1*, 20-cv-356 (LJL). (ECF 250 at ¶ 25). Between December 2018 and May 2019, Okhman purchased textbooks from Wood through the website mercari.com, which Plaintiffs Pearson and Cengage used to purchase books they determined to be counterfeit. (ECF 250 at ¶ 25). Wood registered the Cpmom Storefront on Amazon under the name "Niya Clark" and the address for Savannah State University. (ECF 250 at ¶ 26).

### iii.  Defendant Gilson Jose Goncalves Filho

Before filing suit, Plaintiffs Pearson, Cengage, and McGraw Hill purchased a total of four Counterfeit Books, encompassing four separate Counterfeit Titles, from Defendant Gilson Jose Goncalves Filho's Online Storefront Prime Box up. (ECF 250 at ¶ 27). Filho did not create or buy the counterfeit goods himself. (ECF 250 at ¶ 28). Instead, Filho sourced textbooks from DHGate.com, a third-party marketplace known for counterfeit goods. (ECF 250 at ¶ 28). A customer posted a review on the Prime Box up Storefront complaining that the book they

purchased "looks like a bootlegged copy. Different paper print, and quality material." (ECF 250 at ¶ 28). Filho did not continue selling the Counterfeit Books after the TRO was issued.

### iv.   Defendants Anthem, LLC and Tracy W. Jernigan

Before filing suit, Plaintiffs Pearson and Cengage purchased a total of four Counterfeit Books, encompassing three separate Counterfeit Titles, from Defendants Anthem, LLC and Tracey W. Jernigan's (collectively "Anthem Defendants") Online Storefront Info Avenue. (ECF 250 at ¶ 30). Bank account records identified Jernigan as Anthem's member and manager. (ECF 250 at ¶ 31). Anthem's articles of organization filed with the South Carolina Secretary of State identify as its office an address for a UPS Store in Rock Hill, South Carolina. (ECF 250 at ¶ 31). Anthem, LLC has no physical office, and no website or other online presence. (ECF 250 at ¶ 31).

The Anthem Defendants claim to have no records regarding their Online Storefronts, sales, and purchases. (ECF 250 at ¶ 32). However, Plaintiffs have located additional aliases the Anthem Defendants have used and counterfeits they have sold. (ECF 250 at ¶ 32). Plaintiffs linked the Anthem Defendants to PayPal accounts under the names "Allan Beal," "Irene Springs," "Thanh Miller," and "John Tellman." (ECF 250 at ¶32). Through these accounts, Plaintiffs McGraw Hill, Cengage, and Pearson identified more than 150 additional books, encompassing 30 separate titles infringing on Plaintiffs' Authentic Works and Marks, that the Anthem Defendants sold to third parties. (ECF 250 at ¶ 32).

Data produced by Amazon showed that the Anthem Defendants sold over $38,000 worth of goods through their Amazon storefront identified in the Complaint alone.

6

(ECF 250 at ¶33). Amazon's account records identify the registrant of Info Avenue as "Douglas Lynch" in Eugene, Oregon. (ECF 250 at ¶34). The Eugene address the Anthem Defendants gave to Amazon is the address for a winery, and Plaintiffs could not locate any Douglas Lynch in Eugene, Oregon. (ECF 250 at ¶34). Through expedited discovery, Plaintiffs determined that the bank account receiving proceeds from the sale of counterfeits on Info Avenue was in Anthem, LLC's name. (ECF 250 at ¶34).

### b. Procedural Background

On August 15, 2018, Plaintiffs filed this action (ECF 1). Also on August 15, 2018, Plaintiffs filed an application for a Temporary Restraining Order ("TRO"), an Order to Show Cause for Preliminary Injunction, an Expedited Discovery Order, and an Order Authorizing Alternative Service. (ECF Nos. 5-13). The Honorable Paul G. Gardephe issued an Ex Parte Order (ECF 3) granting Plaintiffs' request for a TRO, as well as permission to serve process on Defendants by email and to conduct expedited discovery into Defendants' identities, locations, and financial accounts. Plaintiffs served the Ex Parte Order on Defendants via email on August 19, 2018. (ECF 14). On August 28, 2018, the Court extended the temporary restraining order to September 12, 2018. (ECF 59).

Following expedited discovery, Plaintiffs filed an Amended Complaint on May 2, 2019. (ECF 128). Plaintiffs served the Amended Complaint on Defendants between June 14, 2019 and December 3, 2019. (ECF Nos. 171, 172, 180, 186, 204). After Defendants failed to respond to the Amended Complaint or otherwise appear, Plaintiffs obtained a Certificate of Default on

May 11, 2020. (ECF 210). On November 25, 2020, the Court entered default judgment against

the remaining Defendants and referred the case to me for an inquest. (ECF 229 at 2).

### III.   Analysis

#### a.   Inquest Standard

Even though a complaint's factual allegations are presumed true in the event of a

default, damages allegations are not entitled to the same presumption. *Greyhound*

*Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Plaintiff must still

supply an evidentiary basis for the specific damages amount sought. *Santana v. Latino Express*

*Restaurants, Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. Jul. 28, 2016). An inquest into damages

may be conducted without an evidentiary hearing. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d

51, 53-54 (2d Cir. 1993). "[A] hearing is not required where a sufficient basis on which to make

a calculation exists." *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL

1669341, at *2 (S.D.N.Y. May 14, 2012). In this case, no hearing was requested or held, as the

damages awarded can be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA),*

*Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

#### b.   Liability

##### i.   Copyright Infringement

Under the Copyright Act, the owner of a copyright has the exclusive right, or the right to

authorize others:

> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare
> derivative works based upon the copyrighted work; (3) to distribute copies or
> phonorecords of the copyrighted work to the public by sale or other transfer of
> ownership, or by rental, lease, or lending; (4) in the case of literary, musical,

dramatic, and choreographic works, pantomimes, and motion pictures and other
audiovisual works, to perform the copyrighted work publicly; (5) in the case of
literary, musical, dramatic, and choreographic works, pantomimes, and pictorial,
graphic, or sculptural works, including the individual images of a motion picture
or other audiovisual work, to display the copyrighted work publicly; and (6) in
the case of sound recordings, to perform the copyrighted work publicly by
means of a digital audio transmission.

17 U.S.C. § 106. For a Plaintiff to establish infringement of copyright, they must prove

two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of

work that are original*." Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010). "The word

'copying' is shorthand for the infringing of any of the copyright owner's exclusive rights"

described in 17 U.S.C. § 106. *Id.* (quoting *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004,

1013 (9th Cir. 2001)).

In this case, Plaintiffs have provided copies of the certificates of registration which

proves ownership of valid copyrights for their Authentic Works. (ECF 250 at Ex.1). Defendants

distributed and sold copies of these works without obtaining Plaintiffs' permission.

(ECF 249 at ¶ 22). Plaintiffs allege that Defendants' actions of distributing and selling copies of

their Authentic Works violates their exclusive rights as copyright owners. (ECF 251 at 8-9).

Accordingly, Plaintiffs have adequately pled a copyright infringement claim.

### ii. Trademark Infringement

The Lanham Act imposes liability on any person who, in connection with the sale,

offering for sale, or distribution of a good, either uses a counterfeit of a registered mark or

counterfeits such mark in advertising or packaging materials when such use or counterfeiting is

likely to cause confusion. 15 U.S.C. § 1114(1)(a)-(b). It also bars as false designation the use in

commerce of any word, term, name, symbol, device, or combination thereof, which is likely to cause confusion as to the origin, sponsorship, or approval of a person's goods with those of another person or which misrepresents the nature, characteristics, qualities, or geographic origin of another person's goods. 15 U.S.C. § 1125(a)(1)(A)-(B).

Each of Plaintiffs' claims is analyzed under the same two-part test set forth by the Second Circuit in *Gruner + Jahr USA Publ'g v. Meredith Corp*., 991 F.2d 1072 (2d Cir. 1993). *See William Mark Corp. v. 1&CC*, No. 18-CV-3889 (RA) (RWL), 2019 WL 4195365 (S.D.N.Y. May 20, 2019*), report and recommendation adopted*, No. 18-CV-3889 (RA), 2019 WL 4194536 (S.D.N.Y. Sept. 3, 2019) (citing *Virgin Enters. Ltd. V. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). This test "looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Soter Techs., LLC v. IP Video Corp*., 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021) (quoting *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 486 (S.D.N.Y. 2008)) (internal quotation marks omitted).

As to the first element, "[a] certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (i.e. protectible*)." Lane Capital Management, Inc. v. Lane Capital Management, Inc*., 192 F.3d 337, 345 (2d Cir. 1999). As to the second element, although courts "generally look to the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp*., 287 F.2d 492, 495 (2d Cir.1961)", this detailed analysis is unnecessary in the case of counterfeits "because counterfeits, by their very nature, cause confusion." *Coach, Inc. v. Horizon Trading USA Inc*., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012)

(quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd*., 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003))

(internal quotations omitted).

Here, Plaintiffs meet both elements. First, Plaintiffs' trademarks are all properly

registered, and accordingly are valid and protectable. (ECF 250 at Ex.2). Second, Plaintiffs allege

that Defendants operated websites that used Plaintiffs' registered trademarks to sell

counterfeit versions of Plaintiffs' products. (ECF 35 ¶ 3). Plaintiffs did not consent to

Defendants' use of the marks. (ECF 251 at 3). By establishing that Defendants imitated

Plaintiffs' marks to sell products that were virtually indistinguishable from Plaintiffs' products,

Plaintiffs have established that Defendants' infringements of Plaintiffs' trademarks through the

marketing and sale of counterfeit products are likely to cause consumers confusion.

### iii.  Willful Misconduct

The Court deems all Defendants to have acted willfully in infringing Plaintiffs' copyrights

and trademarks "merely by virtue of their default, and consequent failure to controvert the

evidence of willful misconduct alleged in the complaint (and supporting affidavits)." *William*

*Mark Corp.*, 2019 WL 4195365, at *7. Moreover, Plaintiffs have established in their Complaint

and evidentiary submissions that Defendants engaged in willful counterfeiting through the use

of their trademarks to sell virtually identical products to those made by Plaintiffs. *See, e.g.,*

*Coach, Inc. v. Melendez*, No. 10-CV-6178 (BSJ) (HBP), 2011 WL 4542971, at *5 (S.D.N.Y. Sept. 2,

2011) ("Because the marks used by defendants on their products are virtually identical to the

[Plaintiff] Registered Trademarks, the conclusion is inescapable that defendants' infringement

and counterfeiting is intentional."), *report and recommendation adopted*, 2011 WL 4542717

(S.D.N.Y. Sept. 30, 2011). Further supporting a finding of willfulness, all Defendants except for Defendant Filho continued to sell Counterfeit Books and Counterfeit Titles *after* being put on notice by the Court when the TRO was issued. (ECF 251 at 12-13).

Defendant Filho's conduct, although also willful due to his failure to participate in this litigation, was different in kind both because he ceased selling Counterfeit Books after the TRO was issued, and because he purchased the Counterfeit Titles from a third party. *See supra* Section II.a.iii. *See, e.g., CJ Prod. LLC v. Your Store Online LLC*, No. 11-CV-9513 (GBD) (AJP), 2012 WL 2856068, at *4 (S.D.N.Y. July 12, 2012), *report and recommendation adopted*, No. 11-CV-9513 (GBD) (AJP), 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012) (collecting cases).

### c.  Damages

Plaintiffs seek statutory damages under the Copyright Act and the Lanham Act.

Under Fed. R. Civ. P. 55(b), the court must make an independent assessment of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dyn., Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Rolls-Royce plc v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 155 (E.D.N.Y. Jan. 27, 2010). Damages are proven through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded. *Greyhound Exhibitgroup*, 973 F.2d 155 at 158. Statutory damages not only offer monetary relief, but also provide a deterrent function. *Id.* at 157*; Louis Vuitton Malletier v. Carduci Leather Fashions*, 648 F. Supp.2d 501, 504 (S.D.N.Y. Aug. 19, 2009).

### i. Copyright Damages

The Copyright Act, 17 U.S.C. § 504, allows for damages up to $30,000 for each

infringement of a particular work or, if the plaintiff can show that the infringement "was

committed willfully," damages up to a maximum of $150,000 per infringement.

17 U.S.C. § 504(c)(1)-(2). Although willfulness may be shown through the defendant's

knowledge, willfulness may also be "inferred from a failure to appear and defend the action."

*Van Der Zee v. Greenidge*, No. 03-CV-8659 (RLE), 2006 WL 44020, at *3 (S.D.N.Y. Jan. 6, 2006).

As stated above, because Defendants failed to appear, and Plaintiffs' motion for default

judgment was subsequently granted, Defendants' infringement was willful. (ECF 229).

Although statutory damages are capped at $150,000 per willful infringement, the

"district judge has wide discretion in setting the statutory damage award." *See Island Software*

*and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 265 (2d Cir. 2005). In determining the

amount of statutory damages, courts in the Second Circuit commonly consider the following

factors:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by
> the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent
> effect on the infringer and third parties; (5) the infringer's cooperation in
> providing evidence concerning the value of the infringing material; and (6) the
> conduct and attitude of the parties.

*Myeress v. Elite Travel Group USA*, 18-CV-340 (AJN), 2018 WL 5961424, at *3 (S.D.N.Y.

Nov. 14, 2018) (quoting *Bryant v. Media Right Productions*, 603 F.3d 135, 144 (2d Cir. 2010)).

Here, the Court can determine the first, fourth, and sixth factors, i.e., the Defendants'

state of mind; the deterrent effect on Defendants and third parties; and Defendants' conduct.

However, because of the Defendants' default and the lack of discovery, Plaintiffs were unable to obtain materials regarding Defendants' infringing operations, making a precise calculation of Defendants' profits is not possible. (ECF 251 at 7-13). Therefore, the second, third, and fifth factors, i.e., the expenses saved or the profits gained, the exact revenues that Plaintiffs lost as a result of the infringement, and the value of infringing material, cannot be determined.

In addition to the Defendants' default, the Court finds that the Defendants' conduct shows knowing and willful infringement of Plaintiffs' copyrights. Most notably, Defendants (with the exception of Defendant Filho) sold counterfeit copies under false names and addresses on Amazon and other online marketplaces, *after* the Court issued the TRO, thereby putting the Defendants on notice. (ECF  251 at 12-13). *See Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F.Supp.2d 458, 479–80 (S.D.N.Y. 2001) (awarding maximum statutory damages for defendant's infringement that took place after the district court had rejected defendant's claim that its conduct was not infringing, "clearly demonstrating chutzpah, or in more legal parlance, willfulness").

The Court also finds that a significant damage award will have a significant deterrent effect on Defendants and other potential copyright infringers. *CJ Prod. LLC v. Your Store Online LLC*, 11-CV-9513 (GBD) (AJP), 2012 WL 2856068, at 3*(S.D.N.Y. July 12, 2012), *report and recommendation adopted*, 11-CV-9513 (GBD) (AJP), 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012) (noting that "the goal of deterring similar conduct by other enterprises requires a substantial award").

Similar cases under similar circumstances have received awards of maximum statutory damages for Defendants' knowing and willful infringement. *See e.g. Pearson Educ., Inc. v. Labos*, 19-CV-487 (JPC), 2021 WL 4507530, at *4-5 (S.D.N.Y. Sept. 30, 2021) (awarding $150,000 per infringed copyright in an action brought by major publishers for the sale of counterfeit textbooks); *Cengage Learning, Inc., et al. v. Doe 1 d/b/a bargainsofmaine*, 18-CV-403 (RJS), 2018 WL 3549877, at *3 (S.D.N.Y. May 11, 2018) (collecting cases). Accordingly, for the reasons set forth below, *see infra* Section III.c.iii, I recommend that Plaintiffs be awarded statutory damages for copyright infringement in the amount of **$3,690,000**.

### ii.  Trademark Damages

Pursuant to the Lanham Act, Plaintiffs are entitled "to recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Plaintiffs have elected to recover statutory damages. (ECF 251 at 10-19). The Lanham Act provides that statutory damages awards must be awarded in the following amounts:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just;
>
> or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

5 U.S.C.S. § 1117(c)(1)-(2).

Although statutory damages are capped at $2,000,000 per willful infringement, as with copyright, the "district judge has wide discretion in setting the statutory damage award." *See*

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 265 (2d Cir. 2005).

Generally, when determining the appropriate statutory award, the court will consider: "(1) the

expenses saved and profits reaped by the defendant in connection to with the infringement, (2)

the revenues lost by the plaintiff as a result of the defendant's conduct, and (3) the infringer's

state of mind, whether willful, knowing or merely innocent." *Warner Bros. Inc. v. Dae Rim

Trading, Inc.*, 677 F. Supp. 740, 769 (S.D.N.Y. Jan. 21, 1988).

 Here, Plaintiffs seek the maximum statutory damages for willful infringement. (ECF 251

at 7-13). Since Defendants failed to appear or provide any records or discovery in this action,

the Court is unable to determine the value of the infringing material, the expenses Defendants

saved or the profits he gained, or the exact revenues that Plaintiffs lost as a result of their

infringement. (ECF 251 at 7-13). However, the Court can evaluate the potential deterrent effect

on Defendants and Defendants' future conduct. As already discussed, the willfulness of

Defendants' conduct is shown both by Defendants' default and Defendants' continued sale

Counterfeit Books and Counterfeit Titles after the issuance of the TRO. (ECF 251 at 12-13). The

deterrent effect of a statutory damages award against Defendants and other potential

trademark infringers is significant. *CJ Prod. LLC*, 11-CV-9513 (GBD) (AJP), 2012 WL 2856068, at

*3 (noting that "the goal of deterring similar conduct by other enterprises requires a substantial

award"). Plaintiffs have also submitted cases where the court has awarded the maximum of

statutory damages under similar facts to those here. (ECF 251 at 6-7). *See, e.g. Pearson Educ.,*

2021 WL 4507530, at *5 (awarding $2,000,000 per infringed trademark in an action brought by

major publishers for the sale of counterfeit textbooks); *Cengage Learning, Inc., et al.*,18-cv-403

(RJS), 2018 WL 3549877, at *3 (collecting cases). Accordingly, for the reasons set forth below, *see infra* Section III.c.iii, I recommend that Plaintiffs be awarded statutory damages for trademark infringement in the amount of **$24,300,000**.

### iii.   Computation of Damages

I recommend that Plaintiffs be awarded a total of **$27,690,000**, broken down as follows: $3,390,000 for copyright infringement, and $24,300,000 for trademark infringement.

Generally, statutory damages are awarded per copyright registration. *WB Music Corp. v. RTV Commc'n Grp., Inc.*, 445 F.3d 538, 540 (2nd Cir. 2006) ("[T]he total number of awards of statutory damages that a plaintiff might recover in any given action depends on the number of works that are infringed . . . regardless of the number of infringements of those works."). Similarly, under the Lanham Act, statutory damages are generally measured per counterfeit mark. 15 U.S.C. 1117(c*); Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 426 (S.D.N.Y. 2018) ("This Court has discretion to award anywhere between $1,000 and $2,000,000 per counterfeit mark per type of good sold.").

Plaintiffs requested damages be awarded against each Plaintiff as follows per instance of infringement:[3]

---

[3] In the following charts, the number contained in the parenthetical in column "Copyright Damages" represents the number of copyright registrations infringed by the specified Defendant(s) against the specified Plaintiffs (one mark per Plaintiff), and the number contained in the parenthetical in column "Trademark Damages" represents the number of trademark registrations infringed by the specified Defendant(s) against the specified Plaintiffs (one mark per Plaintiff). *See* ECF 249 ¶¶ 31-48; ECF 218, Ex. 5. "[W]hile Plaintiffs are seeking damages under both the Copyright Act and the Lanham Act, they are not, for any single act of infringement, seeking awards for both copyright and trademark statutory damages." (ECF 249 ¶ 52). In other words, Plaintiffs do not seek damages for each instance of willful copyright infringement so as not to "double count" copyright damages alongside trademark damages.

| Defendants | Plaintiff(s) | Copyright Damages | Trademark Damages | Total Damages |
|---|---|---|---|---|
| Anthem, LLC and Tracy W. Jernigan | Cengage and Pearson | $150,000 (1) | $4,000,000 (2) | $4,150,000 |
| Bizzare Crafts Defendants | All Plaintiffs | $3,000,000 (20) | $14,000,000 (7) | $17,000,000 |
| Gilson Jose Goncalves Filho | Cengage, McGraw Hill, and Pearson | $200,000 (2) | $2,000,000 (2) | $2,200,000 |
| Niya Wood | Cengage, McGraw Hill, and Pearson | $450,000 (3) | $6,000,000 (3) | $6,450,000 |
| **Total** | | **$3,800,000** | **$26,000,000** | **$29,800,000** |

I recommend the Court adopt Plaintiffs' proposed damages as within the reasonable statutory range, **with the following modifications**:

First, as discussed above, *see supra* Section III.b.iii, Defendant Filho did not continue to sell Counterfeit Books after the TRO was issued, and purchased and re-sold Counterfeit Books from a third party. Accordingly, although a substantial award of statutory damages is still warranted against Filho due to his infringing conduct and failure to participate in this litigation, I recommend a smaller amount of statutory damages be assessed against him: $30,000 per copyright infringement, and $150,000 per trademark infringement.

Second, Plaintiffs request that a $3,000,000 copyright damages award be assessed against the Bizzare Crafts Defendants, based on infringement of 20 copyright registrations ($150,000 x 20 = $3,000,000). However, in their Proposed Findings of Fact, Plaintiffs assert that the Counterfeit Books sold by Bizzare Crafts Defendants "encompass[] *19* separate Counterfeit

18

Titles," and that only 18 of those titles continues to be sold after the TRO was issued.

(ECF 249 at ¶¶ 31, 33) (emphasis added). Accordingly, the maximum statutory damages

assessed against the Bizzare Crafts Defendants should be assessed based on the 18 instances of

copyright infringement after the TRO was issued identified in Plaintiff's Proposed Findings of

Fact, and less-than-maximum statutory damages assessed based on the other infringed Title.

Accordingly, I recommend that damages be awarded to Plaintiffs as follows:

| Defendants | Plaintiff(s) | Copyright Damages | Trademark Damages | Total Damages |
|---|---|---|---|---|
| Anthem, LLC and Tracy W. Jernigan | Cengage and Pearson | $150,000 (1) | $4,000,000 (2) | $4,150,000 |
| Bizzare Crafts Defendants | All Plaintiffs | *$2,700,000 (18); $30,000 (1)* | $14,000,000 (7) | *$16,730,000* |
| Gilson Jose Goncalves Filho | Cengage, McGraw Hill, and Pearson | *$60,000 (2)* | *$300,000 (2)* | *$360,000* |
| Niya Wood | Cengage, McGraw Hill, and Pearson | $450,000 (3) | $6,000,000 (3) | $6,450,000 |
| **Total** | | **$3,390,000** | **$24,300,000** | **$27,690,000** |

### d. Injunctive Relief

Plaintiffs move to permanently enjoin Defendants, their agents, and all those in active

concert or participation with them from further infringing Plaintiffs' copyrights and trademarks.

(ECF 251 at 14-16). Under the Copyright Act, the Court may order permanent injunctive relief to

prevent or restrain copyright infringement. 17 U.C.S. § 505(a). The Copyright Act further

provides that the Court may order the destruction of copies found to have been or used in

violation of the copyright owner's exclusive rights. 17 U.C.S. § 503(b). Similarly, under the

Lanham Act, the Court may order permanent injunctive relief "to prevent the violation of any

right of the registrant of the mark registered in the Patent and Trademark Office or to prevent a

violation under subsection (a), (c), or (d) of section 43 [15 U.S.C. § 1125]." 15 U.S.C. § 1116.

Courts should apply "traditional equitable principles" in deciding when to grant permanent

injunctive relief for both copyright and trademark infringement. *eBay, Inc. v. MercExchange,*

*LLC*, 547 U.S. 388, 393 (2006).

To obtain a permanent injunction for copyright infringement, the plaintiff "must

demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law,

such as monetary damages, are inadequate to compensate for that injury; (3) considering the

balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4)

that the public interest would not be disserved by a permanent injunction*." eBay, Inc.,*547 U.S.

at 391; *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

Courts have applied the *eBay* factors to trademark law. *See Herb Reed Enters., LLC v. Fla. Entm't*

*Mgmt.*, 736 F.3d 1239,1248-50 (9th Cir. 2013).

Furthermore, a permanent injunction may be granted following a default judgment

when the plaintiff or moving party has "demonstrated (1) actual success on the merits and (2)

irreparable harm." *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp.3d 290, 299

(E.D.N.Y. Aug. 27, 2015) (quoting *Harris v. Fairweather,* No. 11-CV-2152 (PKC) (AJP), 2012 WL

3956801, at *10 (S.D.N.Y. Sept. 10, 2012)).

Here, the Plaintiffs have demonstrated that each of these factors are met for both

copyright and trademark infringement. First, irreparable harm occurs where "there is any

likelihood that an appreciable number of original prudent purchasers are likely to be misled, or

20

indeed simply confused." *Lobo Enterprises, Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987).

Defendants have advertised and sold the Plaintiffs' Authentic Works on Amazon.com and

several other online platforms causing irreparable harm to Plaintiffs' brands and business

reputation. (ECF 251 at 1-2); (ECF 251 14-16). Second, Defendants' conduct has shown that

monetary damages are inadequate to compensate Plaintiff for their injury. (ECF 251 14-16).

Defendants through their infringing business have sold an indeterminable amount of copies of

the Plaintiffs' Authentic Works. (ECF 251 at 15). Therefore, monetary damages are insufficient

to compensate Plaintiff for the injury it has suffered because such damages will not prohibit

future infringement in their continuing online storefronts. *See Malibu Media, LLC v. Ofiesh*, No.

16-CV-202, 2017 WL 2633526, at *7 (N.D.N.Y. Jun. 19, 2017). Third, there is no hardship to

Defendants because a permanent injunction will require Defendants to do no more than simply

stop engaging in infringement. (ECF 251 at 16). Fourth, a permanent injunction is in the public

interest because the need to protect copyrights is reflected in the Constitution.

U.S. Const. art. I, § 8, cl. 8 ("to promote the progress of science and arts, by securing for limited

time to authors and inventors the exclusive right to their respective writing and discoveries.");

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Int'l News Serv. v. AP*, 248 U.S.

215, 234 (1918). Further, a permanent injunction is in the public interest for trademark

infringement since "it will protect trademark material and encourage compliance with the

Lanham Act." *See Malibu Media, LLC*, 2017 WL 2633526, at *8. Finally, because Defendant has

failed to appear, a default judgment was rendered demonstrating actual success on the merits.

15 U.S.C. § 1116(a).

Accordingly, I recommend that the Court enter a permanent injunction in the same manner that the Court has already enjoined such infringement in issuing the TRO and Preliminary Injunction.

### e.  Post-Judgment Interest

Plaintiffs move for an award of post-judgment interest. The Lanham Act and the Copyright Act permit a plaintiff to receive post-judgment interest "on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, Plaintiff should be awarded post-judgment interest on the money judgment entered in this action following default by Defendants and success on the merits. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (affirming that post-judgment interest is mandatory for civil judgments in federal district courts); *Michael Grecco Prods. V. Function(X) Inc.*, 2019 WL 1368731, at *6 (S.D.N.Y. Mar. 11, 2019) (noting courts grant post-judgment interest against defaulting defendants in cases of copyright infringement).

### IV.  Conclusion

For the foregoing reasons, I recommend that **default judgment be entered** against Defendants Anthem, LLC, Tracy W. Jernigan, Bizzare Crafts, Gilson Jose Goncalves Filho, and Defendant Niya Wood.

I further recommend that Plaintiffs be awarded a total of **$27,690,000** in statutory damages, and that the award be distributed as followed: Defendants Anthem, LLC and Tracy W. Jernigan are liable to Plaintiffs Cengage and Pearson for **$4,150,000**; Defendants Bizzare Crafts are liable to all Plaintiffs for **$16,730,000**; Defendant Gilson Jose Goncalves Filho is liable to Plaintiffs Cengage, McGraw Hill, and Pearson for **$360,000**; and Defendant Niya Wood is liable to Plaintiffs Cengage, McGraw Hill, and Pearson for **$6,450,000**.

I further recommend that Plaintiffs be awarded **post-judgment interest** in accordance with 28 U.S.C. § 1961(a) to be calculated from the date default judgment is entered.

Lastly, I recommend that the Court **order an injunction** permanently enjoining Defendants, their agents, and all those in active concert or participation with them from further infringing Plaintiffs' copyrights and trademarks. (ECF 251 at 15-16).

### V.    Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Margaret M. Garnett, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Garnett.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140,

155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).


Respectfully submitted,



_s/ Ona T. Wang_____

Dated: June 3, 2024
   New York, New York

**Ona T. Wang**
United States Magistrate Judge